UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARYAN DAVANI,

Plaintiff,

v.

E-ZASSI, LLC, et al.,

Defendants.

Case No.18-cv-00214-EDL

**ORDER GRANTING MOTION TO REMAND AND DENYING MOTION TO DISMISS OR TRANSFER**

Re: Dkt. Nos. 15, 21

Before the Court are two early motions in this wrongful termination case. Defendants e-Zassi, LLC, eZassi Inc. and Jennifer Creech (together, "Defendants") have filed a motion to dismiss pursuant to Rule 12(b)(3) for improper venue or, in the alternative, transfer venue pursuant to 28 U.S.C. § 1404(a).[1] Plaintiff Aryan Davani has moved to remand the case back to state court. The Court held a hearing on March 13, 2018. For the following reasons, the Court GRANTS the motion to remand and DENIES the motions to dismiss or transfer as moot.

## I. BACKGROUND

Plaintiff is an Iranian male, who was hired by Defendant E-Zassi on or around August 22, 2016 as Vice President of Global Sales. Compl., ¶ 22. He was terminated from this position on or around March 10, 2017. Id. As Vice President for Global Sales, Plaintiff was responsible for, among other things, generating leads and closing deals on new and existing accounts. Id., ¶ 23. In this role, Plaintiff had two direct supervisors, each of whom overlapped with Plaintiff during part of his tenure. From August 2016 through December 2016, Plaintiff's direct supervisor was e-Zassi's former Chief Executive Officer ("CEO"), Peter Von Dyck. Id., ¶ 25. From January 2017 through the end of his employment, Plaintiff's direct supervisor was Defendant Creech. Id., ¶ 26.

[1] The corporate Defendants will be referred to collectively as "e-Zassi."

Plaintiff alleges that Creech engaged in a pattern of national and gender harassment that targeted Plaintiff from the start of Creech's appointment as CEO. Id., ¶ 27. Plaintiff traveled from his home in San Francisco, California, to Jacksonville, Florida, where Creech worked, to meet her for the first time. Id., ¶ 28. During that trip, Plaintiff alleges that Creech made a number of harassing statements to him, including that she "doesn't date Persian men because they are too short, in more ways than one" and asking Plaintiff if he has a "Persian temper." Id. He alleges that she continued to make harassing comments about his "Persian temper" on many occasions. Id., ¶¶ 29, 35. She also allegedly made a comment to him on or around January 27, 2017 when he approached her about upcoming business travel plans that he should "not go booking anything too far out in advance, we don't [sic] if you will be in the country at that time after Trump gets done with you guys." Id., ¶ 31. She allegedly also told him that she was directing another e-Zassi employee to attend a meeting with him because she thought "we should have more of an American presence at the meeting and so I am having Walter join you." Id., ¶ 34. He further alleges that Creech interfered on at least two occasions with his opportunities to work with other female colleagues or potential clients. Id., ¶¶ 30, 33.

On or around March 8, 2017, after these comments, Plaintiff made a complaint about Creech's conduct to e-Zassi's board member Gleb Zarkh. Id., ¶ 36. After speaking with other members of the board, Mr. Zarkh told Plaintiff on March 9, 2017 that he discussed the matter with Creech and he would need to "work with [Creech] directly on these issues and come to a resolution." Id., ¶ 38. Plaintiff responded with disappointment, and informed Mr. Zarkh that he had filed a complaint with the California Department of Fair Employment & Housing about Creech's allegedly harassing conduct. Id., ¶ 39. That same day, Plaintiff alleges that he received a call from another board member, Bill Wolf, saying that he was disappointed by the news of the formal complaint with state officials and the company was "backing" Creech. Id., ¶ 40. On March 10, 2017, Defendants terminated Plaintiff's employment. Id., ¶ 41.

## II. PROCEDURAL HISTORY

On October 10, 2017, Plaintiff filed a complaint in the Superior Court of California, County of San Francisco. Dkt. No. 1. Defendants were served with the summons and complaint

on December 11, 2017. Id. His complaint raised allegations relating to his employment Defendants. Id. He asserted the following claims against e-Zassi, LLC and eZassi, Inc.: (1) retaliation for attempting to and exercising rights under, including opposing violations of, Government Code Part 2.8 (FEHA; California Government Code §§ 12900-12996; California Government Code § 12940(h)); (2) Failure to prevent retaliation and harassment (California Government Code § 12940(k)); (3) discrimination based on sex (California Government Code § 12940(a)); and (4) wrongful termination in violation of public policy. Id. He raised the following claims against all three Defendants: (5) harassment based upon national origin (California Government Code § 12940(j)); and (6) harassment based on sex (California Government Code § 1294(j)). Id.

The complaint alleges that Plaintiff is a resident of San Francisco County, California. Id., ¶ 3. It further alleges that e-Zassi, Inc. is a Florida Limited Liability Company; e-Zassi, Inc. converted into eZassi, Inc. on or around May 31, 2017; and eZassi, Inc. is now a Delaware corporation. Id., ¶¶ 4. It also alleges that Creech is a resident of Jacksonville, Florida, now and was at all relevant times. Id., ¶ 6. Plaintiff's complaint sought "all actual, consequential, and incidental financial losses, including but not limited to loss of earnings and employment benefits, together with prejudgment interest;" compensatory and general damages; punitive damages; injunctive relief; declaratory relief; and attorneys' fees and costs. Id., Prayer for Relief.

Defendants filed a notice of removal in this Court on January 10, 2018, based on diversity jurisdiction. Id., ¶ 1. On January 17, 2018, Defendants filed a motion to dismiss pursuant to Rule 12(b)(3) due to improper venue or, in the alternative, to transfer venue to the United States District Court for the Middle District of Florida under 28 U.S.C. § 1404(a). Dkt. No. 15. Plaintiff filed a motion to remand the case to state court on January 31, 2018. Dkt. No. 15. The Court held a hearing on both motions on March 13, 2018.

## III. DISCUSSION

### A. Motion to Remand

#### 1. Legal Standard

Under 28 U.S.C. § 1441(a), a defendant may remove from state court to federal court any

action in which the federal court has original jurisdiction. District courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the opposing parties. 28 U.S.C. § 1332(a); Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373-74 (1978).

The amount in controversy is an estimate of the total amount in dispute, not a prospective assessment of defendant's liability. See Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 400 (9th Cir. 2000). The Supreme Court has explained the distinction that the court must draw between original jurisdiction and removal jurisdiction:

> [I]n cases brought in the federal court . . . [i]t must appear to a legal certainty that the [plaintiff's] claim is really for less than the jurisdictional amount to justify dismissal . . . A different situation is presented in the case of a suit instituted in a state court and thence removed. There is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on the federal court or that the parties have colluded to that end.

Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-90 (1938)).

If at any time before judgment it appears that the district court lacks subject matter jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." Gaus, 980 F.2d at 566. Federal jurisdiction must be rejected if there is any doubt as to the right of removal. Id.. "The 'strong' presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id.

Where the state court complaint does not specify the amount in controversy, the defendant bears the burden of proving the amount by a preponderance of evidence. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403-04 (9th Cir. 1996). With respect to the amount in controversy, "[i]f it is *unclear* what amount of damages the plaintiff has sought . . . then the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount." Gaus, 980 F.2d at 566 (citing Garza v. Bettcher Indus., Inc., 752 F. Supp. 753, 763 (E.D. Mich. 1990)).

Courts have generally used the following framework for determining the amount in

controversy on removal. First, "[t]he district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy. If not, the court may consider facts in the removal petition, and may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"[2] Singer v. State Farm Mut. Automobile Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997); see also De Aguilar v. Boeing Co., 11 F.3d 55, 57 (5th Cir.1993) (holding that it was facially apparent from complaint that jurisdictional amount was exceeded, given claims were for wrongful death, terror in anticipation of death, loss of companionship, and funeral expenses; contrasting this case to another in which it was not facially apparent that jurisdictional amount was exceeded since that case involved only damages for the skin rashes and lost income of small-scale Columbian fishermen); Gwyn v. Wal-Mart Stores, Inc., 955 F. Supp. 44, 46 (M.D.N.C.1996) ("[U]ntil jurisdiction becomes determinate, the court may consider any evidence of the amount in controversy.").

**2. Analysis**

Plaintiff's state court complaint does not allege what the amount in controversy is, so Defendants must demonstrate by a preponderance of the evidence that it exceeds $75,000. Plaintiff argues that Defendants have not bet their burden of demonstrating that the amount in controversy exceeds $75,000 at the time of removal. Defendants raise several arguments in support of their position that the amount in controversy exceeds the statutory minimum, but ultimately the Court finds that Defendants have not met their burden to establish that the requirement is met.

**a. Lost Back Wages**

Defendants' notice of removal alleges that the amount in controversy exceeds $75,000 because Plaintiff's annual salary at the time of his termination on March 10, 2017 was $120,000. Notice, ¶ 16; Creech Decl., ¶¶ 12-13. Thus, Defendants state that "[b]ased on Plaintiff's salary at

[2] Defendants cite Cagle v. C&S Wholesale Grocers, Inc., 2014 WL 651923 (E.D. Cal. Feb. 19, 2014), for the proposition that "defendants need not provide summary judgment-type evidence" to carry this burden and calculations can be made on "assumptions and speculation." Id. at *7. Although the district court held that "summary judgment-type evidence" was not required to meet the defendant's burden, it did require detailed information supporting the claimed amount in controversy and did not adopt an "assumptions and speculation" standard. Id.

the time of his termination, and his request for lost earnings and employment benefits since the time of his termination 10 months ago, in conjunction with his request for compensatory damages, and punitive damages, it is more likely than not, that the amount in controversy exceeds $75,000 irrespective of fees and costs." Id. Ten months of this salary equals $100,000. On its face, this simple arithmetic seems to establish that the amount in controversy is met and the Court has subject matter jurisdiction over the case.

Plaintiff contends, however, that the notice of removal does not meet Defendants' burden for several reasons. First, Plaintiff argues that Defendants' statement lacks foundation because it was based on Creech's declaration that "[a]t the time of Plaintiff's termination, his salary was $120,000." Creech Decl., ¶ 13. He argues that there is no evidentiary support for this statement because a witness's statement must be based on her personal knowledge of the facts asserted, Fed. R. Civ. P. 602, but she has simply stated that her declaration was based on "personal knowledge of the following facts" and offered no foundation for that statement. However, Creech's declaration states that it is based on her personal knowledge as CEO of e-Zassi, which is an adequate foundation for establishing Plaintiff's salary in his position at the company. Significantly, Plaintiff does not put forward any evidence that this was *not* his salary, which is a tacit admission that the declaration is accurate.

More persuasively, Plaintiff next argues that Defendants have not established the amount in controversy because they did not consider his mitigation of damages. See Lamke v. Sunstate Equip. Co., 319 F. Supp. 2d 1029, 1033 (N.D. Cal. 2004) (considering the plaintiff's mitigation of damages in determining of the defendant met its burden to prove the amount in controversy in removal case). He has provided a declaration that he has mitigated his economic damages by earning approximately $62,500 from subsequent employment after his termination through the date of Defendants' notice of removal. Davani Decl., ¶ 3. Defendants concede that this was an adequate mitigation of damages and they do not contest the $62,500 figure.

Plaintiff also put forward evidence that Defendants' notice of removal fails to take into account that they continued to pay him through April 10, 2017 for an additional thirty days of wages after his termination. Davani Decl., ¶ 2. Defendants do not dispute this evidence. Thus,

even accepting that he earned $120,000 a year as an e-Zassi employee, Plaintiff's his lost wages from April 11, 2017 through January 10, 2018 were no more than $27,500 (9 months at $10,000 per month, minus $62,500 in mitigation). At the hearing, both sides agreed that the amount of lost back wages that should be used to assess the amount in controversy is $27,500. This amount by itself plainly falls well below the amount in controversy threshold for federal jurisdiction.

**b. Lost Future Wages**

Defendants argue that the Court should also include lost future wages in considering whether they have established the amount in controversy requirement. While Plaintiff's mitigation of damages does not eliminate a potential claim for future lost earnings if his current employment does not compensate him in a similar manner as his job at e-Zassi, Defendants have not met their burden to provide a factual basis for the Court to determine what a reasonable estimate of Plaintiff's lost future wages is. For example, although his recent pay appears to be somewhat lower, he may receive raises or obtain other better paid employment. Without any evidence to establish the amount of future lost wages, the Court cannot factor this element of damages into a calculation of the amount in controversy at the time of removal.

**c. Punitive Damages**

With respect to his request for punitive damages, Defendants' notice of removal merely stated that Plaintiff's state court complaint sought punitive damages, but it did not provide an estimate of what those punitive damages, if any, would be. Notice, ¶ 15. Plaintiff cites two other district court cases where the courts concluded that the possibility of a punitive damages award is insufficient to prove the amount in controversy requirement has been met. See Burk v. Med. Sav. Ins. Co., 348 F. Supp. 2d 1063, 1069-70 (D. Ariz. 2004) (only evidence of possible punitive damages award was statement that "there is not a single reported Arizona case decided in the last 15 years in which punitive damages did not exceed $75,000," which the court found was insufficient to establish "likely punitive damages"); Surber v. Reliance Nat'l Indem. Co., 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000) (the defendant failed to meet its burden to prove punitive damages when no evidence on the issue was introduced and the facts in the complaint merely suggested the possibility of a punitive damages award).

Defendants argue that the Court should accept a 1:1 ratio method of punitive damages to economic damages, which the Ninth Circuit accepted in Guglielmino v. McKee Foods Corp., 506 F.3d 696, 698-71 (9th Cir. 2007), as an adequate approximation of punitive damages in this case. However, Defendants have not offered any basis for concluding that the facts or legal issues in Guglielmino are analogous in any way to the facts alleged in this case in order to demonstrate that this is an appropriate ratio to apply here. Furthermore, based on the allegations in the complaint, it is not apparent that it is more likely than not that Plaintiff would be entitled to punitive damages, which are the exception, not the rule. Accordingly, the Court will not consider an unspecified and unsupported amount of punitive damages in considering whether the amount in controversy exceeds $75,000.

**d. General Damages**

Defendants also argue that Plaintiff's claim for general damages is likely to include damages for the "mental anguish and emotional suffering" that he allegedly suffered as a result of Defendants' conduct. While that is a reasonable assumption, Defendants do not put forward any basis for how the Court should estimate what those damages are. Instead, they attempt to shift the burden to Plaintiff to prove those damages by stating that "Plaintiff's Motion to Remand omits any discussion of Plaintiff's general damages and does not refute the escalating effect that general damages would have on the amount in controversy." See Cable v. Merit Life Ins. Co., 2006 WL 1991664, at *3 (E.D. Cal. July 14, 2006) (concluding that the defendant's argument that emotional distress damages exceeded the jurisdictional threshold was insufficient when the "[d]efendant provide[d] no reliable basis for determining the amount of emotional distress damages likely to be recovered in this case"). Because it is Defendants' burden to prove these damages and they have not provided any evidence for doing so, they have failed to carry their burden as to general damages.

**a. Attorneys' Fees**

Plaintiff's prayer for relief also seeks attorneys' fees. While attorneys' fees are not usually considered part of the amount in controversy for diversity purposes, they may be included in the calculation when the underlying statute authorizes an award of attorneys' fees. See Galt G/S v.

JSS Scandinavia, 142 F.3d 1150, 1155-56 (9th Cir. 1998). Plaintiff has brought claims under the FEHA, which allows the Court to award reasonable attorneys' fees and costs to the prevailing party. See Cal. Gov't Code § 12965(b).

It is unclear whether attorneys' fees should include fees accrued after the date of removal for purposes of determining the amount in controversy. Compare Dukes v. Twin City Fire Ins. Co., 2010 WL 94109, at *2 (D. Ariz. Jan. 6, 2010) (only considering fees through the date of removal); Faulkner v. Astro-Med, Inc., 1999 WL 820198, at *4 (N.D. Cal. Oct. 4, 1999) (same), with Brady v. Mercedes-Benz USA, Inc., 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) (including reasonable estimate of attorneys' fees likely to be expended). Plaintiff argues that Defendants have failed to meet their burden on fees because they have not provided any evidence of what fees Plaintiff has "accrued up until the date remand is considered." Defendants have offered no argument on what period of attorneys' fees is appropriate.

The Court need not decide this issue because Defendants have not put forward sufficient evidence to establish any reasonable estimate of the amount of attorneys' fees that have been incurred up to any point in this litigation. They have provided evidence from which the Court can infer that Plaintiff's counsel has spent some amount of time on this case through the removal petition by pointing to Plaintiff's initial demand letter, sent by counsel, as well as the complaint's allegation that Plaintiff pursued his administrative remedies through the Department of Fair Employment and Housing and that Plaintiff had counsel's assistance in drafting and filing the state court complaint and propounding written discovery requests. The parties dispute whether that amount of time is significant or whether it merely represents minor preliminary litigation work.

Although there is no indication of how many hours Plaintiff's counsel has spent or what his billing rate is, Defendants argue that it is more likely than not that the attorneys' fees combined with this $27,500 in past lost earnings, claimed future earnings, general damages, and punitive damages will exceed $75,000. Defendants' cite Guglielmino, which affirmed denial of motion to remand where the district court found that the defendants met their burden based on economic damages, attorneys' fees estimated at a "conservative" 12.5% of economic damages, and punitive damages at a "conservative" ratio of 1:1 to economic damages. 506 F.3d at 698-71.



United States District Court
Northern District of California

While it can be surmised, based on Defendants' proffered evidence, that Plaintiff's counsel has incurred some amount of attorneys' fees at least through the notice of removal, the Court has no way of estimating what those fees may be, much less that they exceed $47,500 (the amount necessary to make up the difference between $75,000 and the $27,500 of lost back wages). See Ragano v. Urban Fulfillment Serv. LLC, 2016 WL 1610594, at *3-4 (C.D. Cal. Apr. 21, 2016) (granting motion to remand where the defendant "fail[ed] to demonstrate adequately that attorney's fees in this case would more likely than not exceed $75,000" where neither the defendant's "declaration nor the biography attached indicate the estimated billable hours, the approximate amount of work to be completed, plaintiff's counsel's hourly billing rate, or indicate the amount of fee awards granted by courts in similar cases"); Surber, 11 F. Supp. 2d at 1232 ("Defendant has not estimated the amount of time that the case will require, nor has it revealed plaintiff's counsel's hourly billing rate" and the defendant's "bald statement [that fees "may well, in and of themselves, exceed the jurisdictional minimum"], unsupported by any evidence, does not suffice to create subject matter jurisdiction."). Defendants have not supplied the Court with any evidence of Plaintiff's counsel's experience or credentials or evidence of what the average billing rate is in the area for this type of work. Even if the Court applied the rate of 12.5% of economic damages from Guglielmino that Defendants advocate, attorneys' fees at that rate would only add approximately $3,400 (12.5% of $27,500), to the amount in controversy because $27,500 is the only figure of economic damages that Defendants have proven with any specificity.

In short, Defendants have failed to prove by a preponderance of the evidence that this dispute has an amount in controversy in excess of $75,000. Both sides agree that Plaintiff's past loss wages are $27,500. Beyond that, however, Defendants have put forward essentially no evidence upon which the Court should reasonably estimate what the remaining damages are. Thus, there is no basis to find that the amount in controversy exceeds $75,000, and the Court grants Plaintiff's motion to remand this case to state court.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion to remand to state court. Accordingly, the Court DENIES Defendants' motions to dismiss or transfer as moot.

**IT IS SO ORDERED.**

Dated: March 26, 2018

ELIZABETH D. LAPORTE
United States Magistrate Judge